## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

I.T., a minor, by and through
his next friend, M.T.

    Plaintiff,

v.

SCHOOL BOARD OF DUVAL
COUNTY, FLORIDA

    Defendant.
_____/

Case No:

INJUNCTIVE RELIEF SOUGHT

## COMPLAINT

### PRELIMINARY STATEMENT

1. This action is an appeal of an administrative due process Final Order (Ex. A) under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §1400 *et seq.*, in which Plaintiff was an aggrieved party.

2. I.T. is a child with disabilities currently in the seventh grade in Duval County School District. From an early age, I.T. has been diagnosed with cognitive deficits, language impairment, and attention deficit hyperactivity disorder (ADHD). More recently, he has been identified with specific learning disabilities in reading, math and written expression.

3. During I.T.'s fourth- and fifth-grade years, the Defendant failed to offer an Individualized Education Program (IEP) that uses a multi-sensory teaching method with I.T., despite the recommendations of its own psychologists. In addition, Defendant failed to implement his IEP by failing to provide thousands of minutes of language and social skills instruction that was called for in I.T.'s IEP.

4. The Defendant's failures had a material effect on I.T.'s education. For years, I.T. continued to operate on a first-grade level, making no more than *de minimus* gains in his performance, and at times regressing.

5. Although I.T. is now receiving multi-sensory education and is demonstrating progress, he is still significantly behind due to the Defendant's prior failure to provide appropriate instruction.

6. I.T. seeks an order declaring that Defendant School Board denied I.T a free appropriate public education for the 2020-2021 and 2021-2022 school years and an award of compensatory education.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and 20 U.S.C. §1415(i)(2) and (3), as this action is brought under the Individuals with Disabilities Education Act (IDEA).

8. Plaintiff has exhausted his administrative remedies.

9. Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.

10. The venue of this action is proper in the United States District Court for the Middle District of Florida, 28 U.S.C. § 1391(b)(1) & (2), since all claims arose in this district and the underlying administrative action was conducted in this district.

## PARTIES

11. I.T. is a 12-year-old child with disabilities within the meaning of the IDEA who is receiving educational services from the School Board of Duval County. He brings this action through his parent and next friend. M.T. is the father of I.T.

12. The School Board of Duval County ("School Board" or "School District") is the Florida public school district that is responsible for providing educational services to I.T. under the IDEA. It is a local educational agency within the meaning of the IDEA, 20 U.S.C. § 1401(19).

## GENERAL ALLEGATIONS

### I. *The Individuals with Disabilities Education Act*

13. The IDEA was enacted to "ensur[e] children with disabilities and the families of such children access to a free appropriate public education and [to] improv[e] educational results for children with disabilities." 20 U.S.C. § 1400(c)(3).

14. The IDEA and its implementing regulations, 34 C.F.R. Part 300, require states and local educational agencies that receive IDEA funding to provide a free appropriate public education to students with disabilities.20 U.S.C. § 1412(a)(1); 34 C.F.R. § 300.101.

15. Florida has enacted companion statutes and regulations which likewise require local educational agencies to provide a free appropriate education to students with disabilities (called "exceptional students" in Florida). Fla. Stat. § 1003.57; Fla. Admin Code R. 6A-6.03028.

16. A free appropriate public education is "special education and related services that (A) have been provided at public expense…; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary, or secondary school education…; and (D) are provided in conformity with" a student's IEP. 20 U.S.C. § 1401(9).

17. Special education is specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability. 20 U.S.C. § 1401(29).

18. Specially designed instruction is adapting, as appropriate to the needs of an eligible child, the content, methodology, or delivery of instruction to address the unique needs of this child that result from that child's disability and to ensure access to the general curriculum. 34 C.F.R. § 300.39(b)(3).

19. Related services are transportation and such developmental, corrective, and other supportive services as are required to assist a child with a disability to benefit from special education. 20 U.S.C. § 1401(26). Related services include speech and language services. 34 C.F.R. § 300.34(c)(15).

20. As part of their IDEA obligations, states and local educational agencies must develop, review, and revise an IEP for students with disabilities. 20 U.S.C. § 1412(a)(4).

21. An IEP must, among other things, include a "statement of the child's present levels of academic achievement and functional performance"; provide "measurable annual goals, including academic and functional goals," along with a "description of how the child's progress

toward meeting" those goals will be gauged; and set forth appropriate "special education and related services and supplementary aids and services." 20 U.S.C. § 1414(d)(1)(A)(i)(I)-(IV).

22. The IEP, including any related services, must be materially implemented by the educational agency.

## II.   I.T.'s Educational History

23. I.T. is a 12-year-old child whose cognitive disabilities were recognized in preschool. I.T. has had an IEP in place since pre-school.

24. When I.T. was 4 years old, he was referred for a developmental evaluation by the School District. The results of the evaluation showed that I.T. was mildly delayed, and the evaluator recommended that the School District determine whether I.T. was eligible for services.

25. The School District recognized I.T.'s deficits and began providing services for language impairment when he began kindergarten.

26. In 2018, during I.T. first-grade year, a district psychologist conducted a psychoeducational evaluation. I.T.'s academic deficits had increased from the previous evaluation. The psychologist identified academic deficits in reading and math as the areas of academic concern.

27. The school psychologist who conducted the 2018 evaluation recommended, inter alia, instruction in multiple modalities "(e.g., auditory, visual, tactile, etc.) when presenting directions, explanations and instructional content." In other words, she recommended a multi-sensory teaching method.

28. Despite the psychologist's recommendation, I.T. was placed in general education schools that did not employ multi-sensory teaching.

29. Two years later, in February 2020, a re-evaluation was conducted by another district school psychologist. I.T. was in the third grade at the time. Cognitive testing was the only area re-evaluated and again was identified in the very low range. This psychologist also recommended that educators "[i]nvolve as many senses as possible in learning activities."

30. At that time, I.T.'s overall math score on iReady was at the kindergarten level (3rd percentile). His overall iReady reading score was at the first-grade level (6th percentile). I.T.'s social/emotional present level of performance indicated impulsive behaviors, off-task behaviors and use of negative words that generate peer conflict. He also struggled with all forms of oral and aural input such as grade level questions, vocabulary and classroom instructions.

31. Once again, despite the psychologists' recommendations, in fourth grade and the first half of fifth grade the School District continued to place I.T. in general education elementary schools that did not employ multi-sensory teaching methods.

32. Although the IEP team met on April 6, 2020, May 21, 2020, and June 1, 2020, I.T.'s IEP goals remained the same throughout the entire school year, and the IEP was not amended to include specially designed instruction using multi-sensory methods.

33. In fourth grade (2020-2021), I.T. attended Central Riverside Elementary. He made *de minimus* progress in all academic areas, specifically reading and math. His reading and math scores were on a first-grade level at both the beginning and end of the school year.

34. In fifth grade (2021-2022), I.T. attended Annie R. Morgan Elementary School. His IEP methods and goals remained the same in reading and social areas, and as a result I.T. continued to languish. His scores in reading and math remained at the first-grade level for reading and math for the first half of the school year.

35. I.T. was not making adequate progress in light of his circumstances. The IEP created in August of 2019 for I.T.'s third grade year

had goals that were rolled over to his fourth-grade year and, in spite of the lack of progress made and the frequent meetings, remained unchanged until the end of his fourth-grade year. Even following the lack of progress during his fourth-grade year, the reading and behavioral goals were carried over until the end of fifth grade.

36.   I.T's IEP during his fourth and fifth grade years was not appropriately reviewed and revised in light of I.T.'s unique circumstances and lack of progress, despite that fact that the IEP team met on numerous occasions during that time.

37.   At no point during I.T's third, fourth, and the first half of fifth grade years did the school offer him an educational program that included multi-sensory methods.

38.   In addition to the failure to use multi-sensory methods, in fourth and fifth grade the School District failed to implement services in language and social skills that were specified in I.T.'s IEP.

39.   I.T. was identified as Language Impaired as early as his initial IEPs. He also required goals in social emotional/emotional behavior to be successful.

40. In fourth and fifth grades, I.T.'s IEP provided that he was to receive weekly sessions of social/emotional instruction, amounting to 2,160 minutes.

41. The support facilitator's service logs indicate that social/emotional instruction in the fourth grade only occurred five times out of 36 weeks during the entire school year in fourth grade, resulting in a 31-session deficit of IEP implementation, or 1,860 minutes.

42. No social/emotional instruction was provided in fifth grade, amounting to a 2,160 minute deficit.

43. Thus, over I.T.'s fourth and fifth grade years, the School District failed to provide 4,020 minutes of social/emotional instruction.

44. Moreover, in fifth grade, I.T.'s IEP provided that he was to receive 1,890 minutes in language instruction. Instruction did not occur for 1,140 minutes. The district stated this was due to a shortage of speech language pathologists in the district, but this instruction was not compensated for when the fifth grade IEP was drafted on May 13, 2022.

45. The language and social skill instruction were material parts of the IEPs and the provision of an appropriate education for I.T.

46. Following fifth grade, a private psychoeducational evaluation was conducted by Dr. Edward Taylor. At that evaluation, I.T.'s reading scores were in the eighth percentile; his math score was in the .8 percentile and his written expression was also in the .8 percentile.

47. Dr. Taylor found that I.T. had a "reading disorder, math disorder, disorder of written expression, phonological disorder, attention deficit, hyperactivity disorder, combined type" and "adjustment disorder with mixed disturbance of emotions and conduct."

48. Dr. Taylor found that I.T. "lacks verbal fluency" which limited his access to the spoken word. This deficiency affected I.T.'s progress in all subjects in school, because elementary education is primarily verbal.

49. I.T.'s language disability also affects his social interactions and behavior, because he does not have the ability to communicate what he thinks and feels to resolve conflicts with others.

50. I.T. continued to score in and around the first to sixth percentile in reading and math each year until testing in April of his fifth-grade year showed significant gains. The only notable change in instruction was that the ESE teacher began to use a multi-sensory reading program mid-way through the year.

51. Dr. Taylor indicated, "[I.T.] showed notable growth once the [multi-sensory] reading intervention model was implemented and I strongly suggest that the same model be utilized to address his delays in mathematics and written language."

52. Currently, I.T. is in an environment designed for students with ADHD and dyslexia and he is making progress academically and behaviorally, indicating what could have been achieved had the appropriate teaching methods been used when they were first recommended years earlier.

53. Despite I.T.'s improvement, he is still significantly behind. In the sixth grade, he was reading at a third-grade level. His performance on math exams was no better than picking answers at random.

### III.  Administrative Proceedings

54. The IDEA was enacted to ensure that all children with disabilities receive access to a free and appropriate public education "that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).

55. Whenever there is a disagreement between the parents and the school district regarding, inter alia, the provision of free and appropriate public education either from a failure to materially implement an IEP or by offering inadequate services that yield *de minimus* progress, either party may present a complaint to be heard in an impartial administrative proceeding known as a "due process hearing" conducted by the state education agency. 20 U.S.C. §§ 1415(b)(6) & (f)(1).

56. In Florida, these hearings are held by the Division of Administrative Hearings. The final decision is provided by an Administrative Law Judge (ALJ). § 1003.57(1)(c), Fla. Stat. (2023).

57. A prevailing party at an administrative hearing has a right to seek statutory attorneys' fees and related costs under the IDEA. 20 U.S.C. § 1415(i)(3)(B).

58. Due to the failures described above, I.T. filed two complaints alleging the Defendant failed to provide him with a free and appropriate public education. The complaints were filed on June 22, 2022, and January 20, 2023, and were consolidated for decision.

59. On March 23-24, 2023, a hearing on I.T.'s complaints was held before an ALJ. Both I.T. and the Defendant presented live witness testimony and submitted records into evidence.

60. On May 22, 2023, the ALJ issued a final order denying I.T. relief, finding that there was insufficient evidence to support that I.T.'s IEP was deficient or that there was a material failure to implement his IEP. (Ex. A, ¶¶ 45 & 49.)

## CLAIM FOR RELIEF:
## VIOLATION OF THE IDEA

61. I.T. hereby incorporates paragraphs 1-60 by reference.

62. Local educational agencies such as the School Board are required to provide students with disabilities a free and appropriate education which includes developing IEPs with specially designed instruction appropriate to meet the unique needs of the child.

63. Local educational agencies such as the School Board are required to provide students with disabilities a free and appropriate education which includes implementing all services that are material to the IEP.

64. The School Board failed to provide a free appropriate public education to I.T under the IDEA during the 2020-2021 and 2021-2022 school years by:

   a. failing to offer an IEP reasonably calculated to enable I.T. to make progress in light of his circumstances when it failed to include multi-sensory teaching methods in I.T's IEP in the fourth grade and first half of fifth grade; and

   b. materially failing to implement substantial portions of his fourth and fifth grade IEPs when it failed to provide thousands of minutes of language and social skills instruction.

65. When a school district fails to provide a free appropriate public education under the IDEA, the student is entitled to an award of compensatory education to place the child in the same place he would have been absent a violation of the Act.

66. As a result of the School Board's failure to provide a free appropriate education, I.T. suffers from deficits in reading, math and written expression.

67. I.T. is entitled to compensatory education to address the deficits caused by the School Board's denial of a free appropriate education.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.   Find the School Board denied I.T a free appropriate public education for the 2020-2021 and 2021-2022 school years.

B.   Order the School Board to provide compensatory education for its denial of free appropriate public education.

C.   Award Plaintiff reasonable attorneys' fees and expenses for the time in the administrative proceeding.

D.   Award Plaintiff reasonable attorneys' fees and expenses for the time in this action.

E.   Award such other and further relief as the Court considers just and proper.

Dated: August 18, 2023           /s/ *Beverly Brown*
                                 **Beverly Brown, Esquire**
                                 Florida Bar No.: 51978
                                 bevbrown@bellsouth.net
                                 P.O. Box 435
                                 Yulee, Florida 32041
                                 (904) 415-2098

                                 **Jodi Siegel, Esquire**
                                 Florida Bar No.: 511617
                                 Jodi.Siegel@southernlegal.org

**Daniel Marshall, Esquire**
Florida Bar No.: 617210
Dan.Marshall@southernlegal.org
Southern Legal Counsel, Inc.
1229 NW 12th Avenue
Gainesville, Florida 32601
(352) 271-8890

17